1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **EASTERN DISTRICT OF CALIFORNIA**

11

12 JENNIFER ANN CONLEY,                    1:16-cv-944-GSA

13          Plaintiff,

14    v.                                   **ORDER DIRECTING ENTRY OF**
                                           **JUDGMENT IN FAVOR OF DEFENDANT**
15 NANCY A. BERRYHILL, Acting             **NANCY BERRYHILL, ACTING**
   Commissioner of Social Security,[1]    **COMMISSIONER OF SOCIAL**
16                                         **SECURITY, AND AGAINST JENNIFER**
          Defendant.                       **ANN CONLEY**
17

18

19

20 **I.    INTRODUCTION**

21        Plaintiff Jennifer Ann Conley ("Plaintiff") seeks judicial review of the final decision of

22 the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications

23 for Supplemental Security Income ("SSI") benefits pursuant to Title XVI of the Social Security

24 Act. (Docs. 1 and 16). The Commissioner filed an opposition (Doc. 22).  Plaintiff filed a reply.

25 (Doc. 23).  The matter is currently before the Court on the parties' briefs which were submitted

26

27 ───────────────
   [1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A.
28 Berryhill is now the acting Commissioner of Social Security.

1

1  without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]  After
2  reviewing the administrative record and the pleadings, the Court finds the decision is supported
3  by substantial evidence. Therefore, Plaintiff's appeal is DENIED.

4  **II.     BACKGROUND AND PRIOR PROCEEDINGS**[3]

5       The parties agree that the Plaintiff properly exhausted her administrative remedies and that
6  the Appeals Council denied Plaintiff's appeal.  (Doc. 16, pg. 5; Doc. 22, pg. 2).  Therefore, this
7  appeal is a review of Administrative Law Judge Cynthia Floyd's ("ALJ") decision issued on
8  February 17, 2015, which is considered the Commissioner's final order. See, 42 U.S.C. §§
9  405(g), 1383(c)(3). AR 26-36.

10 **III.    ISSUES FOR JUDICIAL REVIEW**

11      Plaintiff challenges the ALJ's non-disability determination.  She alleges that: (1) the ALJ
12 erred at step three when analyzing whether Plaintiff's psoriasis met or equaled Listing
13 Impairment § 8.05 and § 8.00D.4; (2) the ALJ's residual functional capacity was not free of legal
14 error or supported by substantial evidence because the ALJ failed to incorporate moderate
15 limitations in concentration, persistence, and pace, as well as limitations related to Plaintiff's
16 asthma and depression; and (3) the ALJ improperly rejected Plaintiff's  testimony regarding the
17 severity of her symptoms. She requests that the case be remanded for further administrative
18 proceedings. (Doc. 16, pgs. 17-30; Doc. 23, pgs. 2-8). The Commissioner opposes each of these
19 arguments and contends that the ALJ's evaluation at step three, her formulation of the RFC, and
20 her credibility determination were proper. (Doc. 22, pgs. 5-16).

21 **IV.     PLAINTIFF'S HEARING TESTIMONY**

22      Plaintiff suffers from anxiety and psoriasis. She experiences skin lesions which cause her to
23 itch her skin which leads to pain and open wounds. AR 49, 60. When she last worked, she
24 experienced panic attacks that included vomiting, and continues to experience panic attacks
25 around large groups or new people. AR 54. She also went to the emergency room for a panic

---

[2] The parties have consented to magistrate judge jurisdiction. (Docs. 7 and 8).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

attack caused by her asthma about six months ago. AR 63. She has good and bad days. AR 56. Her inability to focus or concentrate on tasks prevents her from working. AR 58. She avoids leaving her home because she feels "everybody's always staring at [her] because of [her] body." AR 58. She has trouble attending doctors' appointments because she has a "hard time telling people [her] business." In fact, she could not get herself to attend a recent appointment with her psychiatrist. AR 56; 61. When she does go to the doctor, she sits outside of the office rather than wait in the waiting room so she does not have to interact with others. AR 66.

Plaintiff lives with her two children, ages seven and ten. AR 49. She owns a dog. AR 56. She used to play with her children in the park, but she no longer does. AR 59. Plaintiff testified that she does not shop for groceries and relies on others to shop for her. AR 51. She has a boyfriend of seventeen years (AR 51; 64), but interacts with her family "very little," and avoids family gatherings such as birthday parties. AR 55-56. She does not eat out, go to the mall, attend church, or belong to any social groups. AR 64-65. She washes her own laundry and engages in "light housework" such as picking up after her children. AR 55; 56; 64. She receives assistance cleaning the home from a family friend. AR 64. She cooks and bathes herself. AR 57. A typical day involves staying at home by herself. AR 56. Standing for a long period to pick up around the house causes pain in her knees. AR 64.

## V.    THE MEDICAL RECORD

### A. Summary of the Medical Treatment Notes

On September 25, 2012, Plaintiff saw her primary care physician, Dr. Cardona, at Alta Family Health Clinic ("Alta"). She complained of an inability to walk due to swollen legs and feet, as well as pain caused by her psoriatic lesions. AR 276. Upon examination, Dr. Cardona noted "psoriatic rash to legs, chest, arms, back," and rash to other areas. He prescribed Keflex, an antibiotic. AR 276.

On January 6, 2013, Plaintiff went to Stanford Hospital for a follow-up appointment with Dr. Brooks Bahr, M.D. He noted Plaintiff has had psoriasis for twenty years and was being treated with an immunosuppressant (Methotrexate), a topical vitamin D (Calcipotriene), a topical steroid (Clobetasol), and folic acid, which she tolerated well. The doctor noted "some

improvement" including "thinning of the plaques." However, Plaintiff exhibited psoriatic "involvement over most of the body and continue[d] to itch." AR 318. Upon examination, she exhibited erythema (i.e. red discoloration of the skin) on her scalp, head, neck, back, chest, abdomen, and all extremities. AR 319. Dr. Bahr diagnosed severe psoriasis vulgaris with improving "thinner" plaques. He replaced her topical steroid with a corticosteroid (Triamcinolone), increased her Methotrexate dose (12.5 mg to 15 mg weekly), and instructed her to follow-up in two months. AR 319-320.

On March 20, 2013, Plaintiff visited Dr. Bahr at Stanford again and reported worsening symptoms. AR 322. Dr. Bahr continued to observe erythema and plaques throughout her body (on her scalp, head, ears, neck, back, chest, abdomen, and extremities). AR 323. Dr. Bahr diagnosed Plaintiff with psoriasis vulgaris as "severe and worsening (more diffuse, new active areas)." AR 323. He increased her dosage of Methotrexate (17.5 mg) and ordered lab testing prior to starting her on Humira to treat the psoriasis. AR 323.

On July 6, 2013, treatment notes from Alta reflect that Plaintiff had been dealing with left wrist pain, and that a recent urgent care visit resulted in a fibromyalgia diagnosis. AR 340. She also had recent nausea and vomiting, and was given a pregnancy test. AR 341. One week later, treatment notes indicate that she experienced swelling in her extremities, and continued to have psoriatic "patches" all over her body. AR 342.

On December 23, 2013, Plaintiff visited United Health Center ("UHC") for treatment of anxiety, which caused her to have difficulty concentrating and sleeping. She reported feeling depressed and hopeless. AR 411; 412. The physician's assistant ("PA"), Mr. Thomas Bouasy, prescribed Klonopin, an anticonvulsant used to treat panic disorders. AR 413. Additional handwritten treatment notes for October 2013 through February 2014, reflect treatment for psoriasis, asthma and anxiety. AR 407-410.

On February 26, 2014, a counselor at UHC diagnosed recurrent depression and agoraphobia with panic attacks. AR 402-405. On April 11, 2014, Plaintiff presented to Dr. Jonathan Terry, DO, for psychiatric evaluation. He assessed Plaintiff's history of psychotropic medications, and noted that she was currently prescribed Buspirone, an antianxiety medication.

AR 395; 398. Dr. Terry diagnosed panic with agoraphonia and dyssomnia (sleep disorder of beginning or staying asleep). AR 399. He discontinued the Buspirone and started her Gabapentin, an anticonvulsant. AR 399.

On March 20, 2014, Plaintiff sought treatment from Dr. Sheila Mayo, M.D., who noted Plaintiff's history of psoriasis treatment (Methotrexate) and that her insurance no longer would pay for treatments at Stanford. AR 366–367. Plaintiff reported a psoriasis flaring, accompanied by pain in her wrists and knees, and noted that the topical creams offered no relief. AR 366-367. Dr. Mayo prescribed an antifungal medication (Ketoconazole) and a topical vitamin (Calcipotriene). The doctor observed "guttate papules, weeping interriginous patches," as well as "psoriasiform plaques with micaceous scale" throughout Plaintiff's body. AR 366; 369.

On April 23, 2014, Dr. Amanpal Gill, MD, of UHC, treated Plaintiff for anxiety. Plaintiff presented with a depressed mood, and stated she was feeling down/depressed/hopeless, and had difficulty concentrating. Dr. Gill noted that her anxiety was associated with chronic pain and skin disease, and that Plaintiff had a positive response to the Gabapentin. AR 389.

On May 9, 2014, Dr. Mayo noted that psoriasis persisted throughout her body and provided a detailed list and chart of psoriatic plaques and guttate papules over more than 50% of Plaintiff's body surface area. She also noted that it was "extremely" itchy. AR 356–59. Plaintiff continued on 15 mg of Methotrexate weekly. AR 356-359.

On July 3, 2014, Plaintiff reported "improvement" to Dr. Mayo, but also indicated she continued to experience joint pain in her arms and knees. AR 352. Dr. Mayo observed that psoriasis persisted on "the body throughout, left proximal shin, left proximal upper arm, and left rib cage" but noted that Plaintiff was doing "MUCH BETTER" overall. AR 352. She continued to prescribe 15 mg Methotrexate per week and warned that Plaintiff would continue to experience "periods of remissions and flares," and noted that stress, infections, medications, and alcohol may exacerbate her symptoms. AR 353. Plaintiff was advised to schedule a follow-up appointment in six months. AR 353.

On July 30, 2014, Dr. Gill treated Plaintiff for an eye problem related to an insect bite, and reported that Plaintiff was negative for itchy skin (prüritis), rash and skin lesion. AR 384. He also

noted that a visual overview of Plaintiff's musculoskeletal system, including all four of her extremities, was normal. AR 385. Plaintiff continued her previously prescribed medications. AR 384.

On November 17, 2014, Dr. Gill treated Plaintiff for elbow pain (caused without known injury), and he continued to assess anxiety, agoraphobia with panic disorder. He diagnosed tennis elbow (lateral epicondylitis) which he treated with a nonsteroidal anti-inflammatory drug. AR 381. Dr. Gill noted normal skin and no skin lesions. AR 380. On November 21, 2014, Dr. Gill treated Plaintiff for constipation and pain in her right wrist. AR 372. With respect to psoriasis, Dr. Gill noted that Plaintiff was still positive for skin lesions, but also reported that upon examination, her skin was normal AR 374-375.

### B. Summary of Medical Opinions

#### 1. Physical Impairments

##### a. Mr. Jason Sanchez, Physician's Assistant

On October 31, 2012, treating Physician's Assistant Mr. Jason Sanchez, PA-C, provided a Residual Functional Capacity Questionnaire assessing Plaintiff's physical condition. AR 278-280. Mr. Sanchez indicated that he treated Plaintiff monthly since February 2012 and that her impairments and limitations existed since that time. AR 278. He opined that Plaintiff's pain, itching or "pruritus," skin lesions, depressed mood, and anxiety attacks would "often" interfere with her ability to maintain attention and concentration for simple work. AR 278. Mr. Sanchez opined that Plaintiff: (1) could walk a single city block before experiencing pain or requiring rest; (2) could sit for thirty minutes at a time and three hours out of an eight hour workday; (3) could stand and walk for one hour at a time and three hours out of an eight hour workday; (4) required the ability to shift positions at will (i.e. a sit-stand option); (5) could lift and carry up to twenty pounds frequently, and fifty pounds occasionally; and (6) would miss four or more days of work per month due to her impairments. AR 278-279. The ALJ accorded Mr. Sanchez's opinion "no weight." AR 32.

///

///

b. <u>Dr. Steven Stoltz, M.D., Consultative Examiner</u>

On January 23, 2013, state agency consultant, Dr. Steven Stoltz, M.D., performed a consultative examination. AR 299–304. His examination revealed diffuse skin psoriasis, including "around her neck, chest, abdomen, back, arms, and legs" with "extensive drying of her skin" and that Plaintiff was scratching it throughout the exam. AR 300-302. He noted Plaintiff did not have the typical plaque-like psoriasis but seemed to have diffuse guttate psoriasis (smaller pink drops as opposed to larger, lighter-colored plaque psoriasis). AR 302. Her examination was otherwise within normal limits. AR 301-303.

Dr. Stoltz diagnosed asthma, obesity, diffuse skin psoriasis, anxiety with depression, and hypertension. However, he opined that Plaintiff had no physical limitations. AR 304. He characterized her psoriasis as "somewhat unsightly and concerning to other individuals," but that it did not lead to a physical restriction. AR 304. The ALJ accorded "some weight" to Dr. Stoltz's opinion. AR 31.

c. <u>Dr. Richard Betcher, M.D. and Dr. Keith Quint, M.D.,</u>
   <u>Non-Examining Physicians</u>

On January 29, 2013, non-examining state agency physician Dr. Richard Betcher, M.D., reviewed Plaintiff's medical record. AR 83–84. Dr. Betcher found Plaintiff capable of performing medium work and noted that Plaintiff could: (1) lift and carry fifty pounds occasionally and twenty pounds frequently; (2) stand and walk for six of eight hours in a workday; (3) sit for six of eight hours in a workday; (4) climb ramps and stairs frequently, and ladders, ropes or scaffolds occasionally; and (5) that because of her psoriasis, she must avoid concentrated exposure to extreme heat and avoid even moderate exposure to wetness. AR 83-84. Seven months later, on August 22, 2013, Dr. Keith Quint, M.D., another non-examining physician, concurred with the assessments of Dr. Betcher, but also limited Plaintiff to frequent postural limitations (balancing, stooping, kneeling, crouching, and crawling). AR 97-98. The ALJ accorded "some weight" to these opinions. AR 31-32.

///

///

2. *Psychological Impairments*

a. <u>Dr. Anapil Gill, M.D., Treating Physician</u>

On December 2, 2014, treating physician, Dr. Anapil Gill, M.D., completed a "Mental Capacity Assessment." AR 417-420. Dr. Gill indicated that he had treated Plaintiff's severe anxiety since October 2013, and that the limitations expressed in his opinion existed since September 25, 2013. AR 420. Dr. Gill opined Plaintiff exhibited two extreme, one marked, and three moderate limitations in concentration, persistence, and pace ("CCP"). AR 417-418. In social interaction, Dr. Gill identified four areas of extreme limitation, including the ability to interact appropriately with the public, the ability to ask simple questions, the ability to interact with supervisors, and the ability to get along with co-workers. AR 418. Dr. Gill opined Plaintiff would miss four or more workdays per month. AR 418. The ALJ accorded Dr. Gill's opinion "little weight." AR 33.

b. <u>Dr. Ekram Michiel, M.D., Examining Psychiatrist</u>

On February 8, 2013, Plaintiff underwent a psychiatric consultative examination conducted by psychiatrist Dr. Ekram Michiel, M.D. AR 308- 311. Dr. Michiel diagnosed adjustment disorder with mixed emotional features, depression, and anxiety and opined that Plaintiff "is able to maintain attention and concentration to carry out simple job instructions," could "relate and interact with coworkers, supervisors, and the general public," and engage in activities of daily living, yet was "unable to carry out an extensive variety of technical and/or complex instructions." AR 310–311. The ALJ accorded Dr. Michiel opinion some weight. AR 33.

c. <u>Dr. R. Torigoe, Ph.D., and Dr. Pamela Hawkins, Non-Examining Psychologists</u>

On February 28, 2013, non-examining state agency psychologist Dr. R. Torigoe, Ph.D., found Plaintiff suffered from severe dermatitis, obesity, and affective disorder, and completed a psychiatric review technique ("PRT"). AR 81–82. Dr. Torigoe found no restriction in activities of daily living or social functioning, and only a mild limitation in CPP. AR 81.

On August 31, 2013, another non-examining state agency psychologist, Dr. Pamela Hawkins, Ph.D., reviewed the medical record and determined affective disorders were not severe, and found no restriction in activities of daily living or social functioning, and only mild

limitations in CPP. T 95–96. The ALJ accorded "some weight" to these opinions. AR 31.

d. Mr. Sanchez, Physician's Assistant

On October 31, 2012 (the same day that he offered an assessment of Plaintiff's physical impairments), Mr. Sanchez completed a "Mental Capacity Assessment" regarding Plaintiff's anxiety, depression, and psoriasis and indicated that Plaintiff's diagnoses and limitations existed since she began treatment in February 2012. AR 281–284. Mr. Sanchez opined five moderate and two marked limitations in CPP. AR 281-282. He also offered moderate or slight limitations in adaptation and social interaction. AR 281-284. He indicated Plaintiff would miss four or more days of work per month due to her impairments. AR 281-284. The ALJ accorded "no weight" to Mr. Sanchez's assessment of Plaintiff's psychological impairments. AR 34.

**VI.    THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 416.920 (a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had

medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

## VII.      SUMMARY OF THE ALJ'S FINDINGS

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 26-36. At step one, she found that Plaintiff had not engaged in substantial gainful activity since September 27, 2012. AR 28. At step two, the ALJ identified psoriasis, obesity, and an anxiety disorder with agoraphobia as severe impairments, and found that Plaintiff's asthma and hypertension were nonsevere impairments. AR 28. At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 28-30.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform a modified version of medium work as defined in 20 CFR § 416.967 (c). Specifically, she found that Plaintiff could: lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; frequently climb ramps and stairs; perform simple, routine, repetitive tasks; and could have no public interaction and only occasional superficial contact with coworkers and supervisors. AR 30-34. Based on Plaintiff's work history, the ALJ concluded that Plaintiff had no past relevant work. AR 34. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy including a hand packer, machine feeder, and a box bender. AR 46-47.

## VII. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VIII. DISCUSSION

### A. The ALJ's Analysis at Step Three Does Not Require a Remand.

Plaintiff argues that the case must be remanded because the ALJ did not properly consider Plaintiff's psoriatic skin lesions at step three. In particular, she contends that at least from January 2013 through May 2014 (and possibly longer), the record consistently reflects the presence of erythema and psoriatic lesions over 50% of her body. These psoriatic flare ups have resulted in pain in her feet which limited her ability to walk (AR 276), and pain in her wrist and knee (AR 340; 352; 366-367; 372), which meets Listing Impairment § 8.00.C.1.( a) (c). Additionally, she contends that her psoriasis has resulted in anxiety and depression which would qualify under Listing Impairment § 8.00.D.4 (Doc. 16, pgs.18-20; Doc. 22, pgs. 2-4). The Commissioner argues that Plaintiff does not meet these listings because Plaintiff has not demonstrated that her psoriasis very seriously limited her functional abilities. (Doc. 22, pgs. 5-8). The Court agrees with Defendant. While Plaintiff has psoriasis, her condition does not rise to the required severity level under the listings.

Listing §8.05 mentions "psoriasis" as one example of dermatitis and defines it as "extensive skin lesions that persist for at least three months despite continuing treatment as prescribed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 8.05). The agency assesses the severity of skin disorders by examining the extent of the skin lesions, the frequency of the flare ups of the skin lesions, and how symptoms affect the ability to function. Listing 8.00(C) provides as follows:

> C. How do we assess the severity of your skin disorder(s)? We generally base our assessment of severity on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including pain) limit you, the extent of your treatment, and how your treatment affects you.
>
> 1. Extensive skin lesions. Extensive skin lesions are those that

11

involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

> c. Skin lesions on the soles of both feet,the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 8.00(C)).

If the skin lesions affect another body system, the listing directs an analysis under the body system: Listing 8.00.D.4 in relevant section provides the following:

> When your impairment affects your skin and has effects in other body systems, we first evaluate the predominant feature of your impairment under the appropriate body system. Examples include, but are not limited to the following.
>
> …
>
> Disfigurement or deformity . . . Facial disfigurement or other physical deformities may also have effects we evaluate under the mental disorders listings in 12.00, such as when they affect mood or social functioning.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 8.00(D)(4)).


Plaintiff argues that the ALJ erred when evaluating her psoriasis because she did not analyze the medical evidence at step three. Instead, she offered an erroneous conclusory finding that Plaintiff failed to meet "listing 8.00 *et al* for skin disorders" because no acceptable medical source opined that she met the criteria for the listing. (Doc. 16, pg. 20). Plaintiff contends that in addition to the doctors treating her physical impairments, Dr. Terry and Dr. Gill who were both treating Plaintiff's psychological condition, found Plaintiff suffered from anxiety which resulted in marked limitations in mental functioning. (Doc. 16, pg. 20). As such, she has met the listing criteria. The Commissioner opposes these arguments and contends the ALJ's step three analysis is supported by substantial evidence. (Doc. 22, pgs. 5-8). A close examination of the record

reveals that the ALJ erred at step three of the analysis, but not to the extent Plaintiff alleges, and thus the error is harmless.

To demonstrate that a condition matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1526(a). Under the law of this circuit, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (An ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment).

Here, Plaintiff presented a plausible theory to meet the equivalence, but after evaluating the medical evidence, the ALJ concluded that Plaintiff did not meet the severity requirements of the listing. AR 29. Although the ALJ did not explicitly discuss the listing and all of the medical evidence in step three of her opinion, she clearly stated that Plaintiff did not meet the severity requirements and noted that a detailed discussion of the medical evidence is "embodied in the residual functional capacity analysis" at step four. AR 29. The ALJ then proceeded to summarize and evaluate the medical evidence related to Plaintiff's physical and mental abilities. AR 31-34.

Although the ALJ erred by not specifically addressing each section of the listing at this step of the disability evaluation process, the error is harmless because the ALJ's evaluation of the medical evidence is supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (An error is harmless if it is "inconsequential to the ultimate nondisability determination"). Specifically, the ALJ gave some weight to consultative examiner Dr. Steven Stoltz's opinion who conducted his own physical examination on January 23, 2013, and

13

concluded that Plaintiff's psoriasis "would not restrict typical physical activities." AR 31; 304. Dr. Stoltz found no limitations with respect to standing, walking, sitting, ambulating, lifting, carrying, or manipulation. AR 304. The ALJ did note, however, that despite Dr. Stoltz's recommendation for no limitations, Plaintiff should be limited to medium work because of her psoriasis and obesity. AR 31. In making this determination, she relied on two state agency reviewing physicians' opinions (Drs. Betcher and Quint), who both concluded that Plaintiff could perform medium work. AR 31. Dr. Betcher also concluded that Plaintiff could only frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds, and that because of her psoriasis, she also needed to avoid concentrated exposure to extreme heat and avoid moderate exposure to wetness. AR 84. Dr. Quint agreed with those limitations, except that he imposed an additional limitation that Plaintiff could only frequently balance, stoop, kneel, crouch and crawl. AR 94.

After weighing these opinions, the ALJ found that restricting Plaintiff to only frequently climbing ramps or stairs was consistent with her psoriasis and obesity, however the other postural limitations - frequently balancing, stooping, kneeling, crouching and crawling - were not warranted because other examinations revealed normal range of motion, and full strength in Plaintiff's extremities. AR 31; 301-303; 341; 399. The ALJ also concluded that the environmental limitations imposed were no longer warranted because recent evaluations revealed normal skin. AR 32; 375; 380.

Plaintiff argues that the ALJ ignored doctors' notes related to pain in her feet, wrist, and knee which limited her mobility. AR 276; 340; 366-367; 352. However, in order for these symptoms to meet the severity criteria of the listing, Plaintiff needed to demonstrate serious limitations in two extremities; that the lesions on the palm of her hand affect her ability to do fine and gross motor movements; or that the lesions on the soles of both feet, seriously limited her ability to ambulate. Listing 8.00 C1 (a-c). Although Plaintiff complained of joint pain to her doctors on a few occasions, these treatment notes do not establish this criteria.

The ALJ also discussed the opinion of PA Sanchez who opined that Plaintiff had physical limitations and that Plaintiff would be absent more than four times per month. AR 34. However,

the ALJ rejected this opinion because PA Sanchez was not an acceptable medical source and the opinion was inconsistent with the other medical evidence, namely physical examinations by several other doctors including Dr. Stolz (AR 299), Dr. Terry (AR 399) and Dr. Gill (AR 389). AR 32; *See*, *Molina*, 674 F.3d at1111(PA's are defined as other sources and are not entitled to the same deference as physicians); 20 C.F.R. § 416.913(d) (defining other medical evidence). Notably, Plaintiff has not argued the ALJ's reasons for rejecting PA Sanchez's opinion was improper. Given the above, the Court finds that the ALJ's determination that Plaintiff did not meet the severity criteria under Listing 8.00C.1with regard to her physical symptoms is supported by substantial evidence.

The Court is also not persuaded by Plaintiff's other argument, namely that she meets the Listing Criteria under § 8.00 D.4. The ALJ evaluated Plaintiff's psychological impairment under Listing 12.06 and found she did not meet that listing. Instead, the ALJ found Plaintiff only had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace, and she had experienced no episodes of decompensation. AR 29-30. In doing so, the ALJ considered four doctors' opinions - Drs. Michiel, Gill, Torigoe, and Hawkins. AR 33. She gave some weight to each of the state agencies doctors who found no disabling condition, but noted that they did not adequately address Plaintiff's agoraphobia and panic disorders, so the ALJ imposed additional restrictions of limiting Plaintiff to no public interaction, and only occasional superficial contact with coworkers and supervisors. AR 30; 33-34.

Plaintiff cites to Dr. Gill's findings of extreme limitations in concentration and persistence, social interaction, and adaptation as indicative of a finding that Plaintiff meets Listing 12.06. However, the ALJ fully considered Dr. Gill's opinion and rejected it as unsupported by the medical evidence as a whole. AR 33. Specifically, the ALJ noted that psychiatric consultative Dr. Michiel found that Plaintiff had sufficient attention and concentration to carry out simple job instructions. AR 33; 309-310. Dr. Michiel also found no limitations with respect to social interaction, and no restrictions on activities of daily living. AR 311. Dr. Michiel's opinion constitutes substantial evidence supporting the ALJ's rejection of Dr. Gill's opinion because his

15

opinion was based on his own independent evaluation. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings alone was substantial evidence for rejecting a conflicting opinion from a treating source); *Thomas*, 278 F. 3d at 957 (9th Cir. 2002) (same); *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995) (While a treating physician's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the opinion of the non-treating source may itself be substantial evidence; it is then solely within the province of the ALJ to resolve the conflict).

The ALJ further noted that Dr. Gill's opinion was inconsistent with an April 2014 treatment note that documented normal findings in the areas of speech, thought process, memory, fund of knowledge, attention span, and concentration. AR 33; 399. An ALJ may permissibly reject a treating physician's opinion when that opinion is conclusory or not supported by clinical findings. See 20 C.F.R. § 416.927 (c)(3) (supportability a factor). Furthermore, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Morgan v. CSS*, 169 F.3d 595, 602 (9th Cir. 1999) (inconsistency between two doctors' conclusions regarding claimant's mental functioning "provided the ALJ additional justification for rejecting" one of the conclusions); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (noting that the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quoting *Thomas*, 278 F.3d at 957). Here, Plaintiff has not argued that the reasons for rejecting Dr. Gill's opinion was improper, therefore Plaintiff has waived this argument. Instead, Plaintiff requests that the Court interpret the medical evidence differently. However, when the ALJ's interpretation of the medical evidence is rational as it is here, the Court must uphold the ALJ's decision. *See Thomas*, 278 F.3d at 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Based on the above, the ALJ fully considered both the skin disorder and mental impairment listings, and properly found that Plaintiff did not meet either one. Although the ALJ did not specifically elaborate on her rationale under the severity impairments heading, she provided a comprehensive recitation of the medical evidence related to Plaintiff's psoriasis in the order which provided an adequate statement for her non-disability determination. AR 28-34; *Gonzalez v. Sullivan*, 914 F. 2d 1197, 1201 (9th Cir. 1990) ("The Commissioner's "four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based'"). Therefore, the ALJ appropriately made a finding of "not disabled" at step three and properly proceeded to step four.

**B. The ALJ's Formulation of the RFC Does Not Constitute Reversible Error.**

Plaintiff argues that the ALJ's RFC limiting Plaintiff to simple repetitive tasks failed to incorporate the moderate impairments in maintaining concentration, persistence, and pace she identified as step two. She also argues that the ALJ did not properly consider limitations related to her asthma and depression. After reviewing the medical record, the Court finds that the ALJ's RFC limiting Plaintiff to simple repetitive tasks in this instance was proper and addressed Plaintiff's difficulties in concentration, persistence, and pace. Moreover, the ALJ adequately addressed Plaintiff's asthma. However, the ALJ erred in failing to identify Plaintiff's depression as an impairment in the decision. Notwithstanding this error, the ALJ's decision is supported by substantial evidence because there are no other identified limitations that the ALJ would have considered given the medical record in this case.

A RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96 8p. Moreover, "it is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those

17

that are not "severe" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p. However, it is well established that the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See*, 20 C.F.R. §§ 416.927(d)(2) (RFC is not a medical opinion and is a decision reserved for the Commissioner), 416.946(c) (identifying the ALJ as responsible for determining RFC).

Here, Plaintiff argues that the ALJ did not properly include her cognitive limitations into the RFC. She relies on *Brink v. Comm'r Soc. Sec. Admin*, 343 Fed. Appx. 211 (9th Cir. 2009), for the premise that the ALJ should have included moderate limitations in concentration, persistence, and pace because the judge identified these limitations at step two. However, this contention is contrary to the Ninth Circuit's opinion in *Stubbs-Danielson*, 539 F.3d 1169 (9th Cir. 2008). As in *Stubbs-Danielson*, here, the ALJ acknowledged plaintiff had moderate limitations in concentration, persistence, and pace at step two, but she relied on a medical source, Dr. Michiel's opinion, finding Plaintiff could still engage in simple repetitive tasks despite her difficulties in these areas. AR 33; 310. Given these facts, the moderate limitations are encompassed in the simple repetitive tasks restriction.

The Court is not persuaded by Plaintiff's argument that the ALJ rejected Dr. Michiel's opinion because she only accorded it some weight, and indicated that additional mental restrictions (namely moderate limitations is concentration, persistence, and pace) were warranted. AR 33. The Plaintiff is correct that when discussing Dr. Michiel's decision, the ALJ noted limited additional mental limitations were needed. However, when doing so, she referenced Plaintiff's agoraphobia and panic disorder, not any other cognitive impairment. AR 33. The ALJ's intent to address her agoraphobia and anxiety was evident when she restricted Plaintiff to no contact with the public and superficial contact with supervisors and co-workers. AR 30. Arguably, the ALJ's reference to imposing "mental limitations," as opposed to "social limitations," could have been more precise. However, given context of the wording in the paragraph, the Court does not interpret the ALJ's decision to mean that Plaintiff could not perform the simple repetitive tasks Dr. Michiel identified, or that the ALJ intended to include additional mental limitations in

concentration, persistence, and pace.

Similarly, the Court is not persuaded by Plaintiff's argument that the ALJ failed to fully consider Plaintiff's limitations caused by her asthma and depression as Plaintiff has not identified any limitations that the ALJ should have included in the RFC related to these impairments. Contrary to Plaintiff's representations, the ALJ discussed Plaintiff's asthma and found it was not a severe impairment. She noted that Plaintiff's lungs were clear, there was no evidence of hospitalization for asthma, and treatment notes revealed normal respiratory systems. AR 28; 340-342; 385  Although Plaintiff argues that Dr. Betcher found that Plaintiff needed to avoid concentrated exposure to extreme heat and avoid moderate exposure to wetness, Dr. Betcher's notes indicate these limitations were made to address Plaintiff's psoriasis, not her asthma. AR 31-32; 84.  Even if the ALJ did err in failing to include the limitations regarding extreme heat or moderate wetness in the RFC, Plaintiff has not demonstrated that this error would be harmful. While Plaintiff points out that the hand packer position (DOT Listing No. 920.587-018), requires frequent exposure to extreme heat, the other two positions identified by the ALJ - machine feeder and box bender - do not require any exposure to extreme heat or wetness. *See* DOT Listings 699.686-010 and 641.687-010. These two occupations exist in sufficient numbers, therefore, the ALJ's identification of the Hand Packer position would be harmless error. *Yelovich v. Colvin*, 532 F. App'x 700, 702 (9th Cir. 2013) (error harmless where the ALJ relied on vocational testimony that incorrectly referenced two jobs but accurately identified a third position that existed in significant numbers (900 regionally)); *Allison v. Astrue*, 425 F. App'x 636, 640 (9th Cir. 2011) (ALJ's error in finding that claimant could work as a small-parts assembler was harmless because other jobs identified by the vocational expert existed in significant numbers).

The ALJ's failure to discuss Plaintiff's depression in the decision is more troubling because Dr. Michiel, Dr. Stolz, and PA Sanchez diagnosed Plaintiff with depression. AR 278; 304; 310. The failure to address this disorder in the opinion is an error. However, because the doctors considered Plaintiff's depression as part of their assessments, the ALJ considered the depression related limitations at the time she made her decision.  Although Plaintiff argues that the ALJ should have completed an assessment at step three under Listing 12.04 for mental impairments,

she has not identified any additional limitation that these doctors did not already address that the ALJ should have considered, nor has she established how she would meet the 12.04 listing impairment. The mere fact that Plaintiff was diagnosed with depression does not demonstrate that the ALJ erred in determining Plaintiff's RFC. *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability)" Here, the ALJ fully explained why she rejected Dr. Gill and Mr. Sanchez's opinions, and Plaintiff has not challenged those reasons. Instead, the ALJ's relied on the findings of Drs. Michiel, Torigoe, and Hawkins when formulating the RFC. AR 32-34; 81-82; 95-96; 310-11. Therefore, the ALJ's RFC finding is supported by substantial evidence.

### C. The ALJ Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ's credibility determination was improper because the ALJ offers no more than a *pro forma* finding that Plaintiff was not fully credible. (Doc. 16, pgs. 27-30; Doc. 23, pg. 7). The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility. (Doc. 22, pgs. 12-16). A review of the entire record reveals Plaintiff's arguments are misplaced.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id*.; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[4] Factors an ALJ may consider include: 1) the

---

[4] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016) and 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Plaintiff alleged that she was unable to work due to her psoriasis which caused an inability to focus, anxiety, agoraphobia, as well as pain. AR 54-66. The ALJ relied on the following reasons to reject Plaintiff's testimony : 1) Plaintiff alleged being unable to work since 2007 but there were no treatment records prior to 2012 to support this claim; 2) Plaintiff alleged that her ability to sit and walk are affected, but the records show Plaintiff sat comfortably and ambulated with a normal gait; 3) Plaintiff alleged her ability to talk was affected, but this was inconsistent with Dr. Michiel's report that her speech was normal; and 4) Plaintiff alleged she could not concentrate, but that is internally inconsistent with her reports that she could pay attention for one to two hours, and spends time during the day watching television. AR 34. These reasons are

is not an examination of an individual's character."). Although Social Security Rulings "do not carry the force of law," they "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).

As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, 862 F. 3d 987, 995 n.5 (9th Cir. 2017) see also *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p became effective after the issuance of the ALJ's decision and the Appeals Council denied review in the instant case. It is unclear whether SSR 16-3 applies retroactively. However, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective complaints in this case meets the guidelines set forth in both SSR 16-3p and its predecessor, SSR 96-7p.

supported by the record and therefore the ALJ's rejection of Plaintiff's testimony is supported by substantial evidence.

First, Plaintiff did not offer any evidence that she was disabled prior to 2012. Plaintiff argues the ALJ reliance the lack of documentation was improper because the judge had a duty to a duty to develop the record concerning this time period. However, in general, it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 416.912(a). To this end, she must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id*. For her part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 416.912(b). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, she may seek additional evidence from other sources. 20 C.F.R. §§ 416.912(b)(2); 416.927(f), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001). However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, she does not have a duty to contact the doctors." *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

Here, Plaintiff has not offered any records to indicate she was disabled prior to 2012. Instead, she makes a blanket assertion that the ALJ's reliance on the lack of documentation was an error. Given these facts, the ALJ did not err in this regard. Even assuming the ALJ erred, the error is harmless because she offered other reasons that are supported by substantial evidence for rejecting Plaintiff's testimony. *See Carmickle v. Commissioner of Social Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) ["So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate conclusion"

such is deemed harmless and does not warrant reversal). For example, the ALJ noted that while Plaintiff testified her ability to sit and walk were affected by her physical impairments, it was noted that Plaintiff was sitting comfortably and ambulating with a normal gait during her examinations. AR 34. Dr. Stoltz noted that Plaintiff was seated comfortably on the examination table and that her gait was normal. AR 301; 304.  Similarly, during an April 2014 examination, Dr. Terry noted that Plaintiff had normal gait and station. AR 399. The ALJ further explained that although Plaintiff reported that her ability to talk was affected, Dr. Michiel found that Plaintiff's speech was normal. AR 34; 309. Additionally, Plaintiff further reported that her ability to concentrate was affected, but the ALJ noted that this was internally inconsistent with her report on the same self-assessment form that she can concentrate for one to two hours and that she spends time during the day watching television. AR 34; 236-237. These reasons are all valid factors the ALJ can assess when evaluating credibility. See, *Thomas*, 278 at 958-959; see also 20 C.F.R. § 416.929(c) (An ALJ can consider inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; the claimant's daily activities; and the claimant's work record when assessing credibility); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Moreover, it was also appropriate for the ALJ to consider the medical evidence that conflicted with Plaintiff's reported difficulties with sitting and walking. *See* 20 C.F.R. § 416.929(c)(2) (ALJ considers objective medical evidence in evaluating intensity and persistence of symptoms).

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints.  *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834.  It is not the role of the Court to re-determine Plaintiff's credibility *de novo*.  If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Accordingly, the ALJ's credibility determination was proper.

X.     CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal against the Commissioner of Social Security. The Clerk of this Court shall enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security, and against Plaintiff Jennifer Ann Conley. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   __**September 27, 2017**__                 _____**/s/ Gary S. Austin**__
                                                  UNITED STATES MAGISTRATE JUDGE